IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JIMMY WALTER,                                    :

      Plaintiff,                              :
                              Case No. 3:02cv280

         vs.                                  :
                              JUDGE WALTER HERBERT RICE

JAMES B. PEAKE, SECRETARY              :
OF VETERANS AFFAIRS,[1]

                        :

      Defendant.

---

DECISION AND ENTRY SUSTAINING, IN PART, AND OVERRULING, IN PART, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #16)

---

The Defendant Secretary of Veterans Affairs ("Secretary") has employed the Plaintiff Jimmy Walter, as a police officer at the Veterans Affairs Medical Center in Dayton, Ohio, since 1992. Doc. #1 ¶¶ 1, 7. Walter brings suit against the Secretary, claiming that the Secretary discriminated against him based on his sex (Count I) and in retaliation for participating in prior protected activities (Count II), in violation of Title VII. As to the harms claimed as a result of the discrimination and retaliation, Walter asserts he was subjected to a hostile work environment, disparate treatment, harassment and a failure to promote. Doc. #35 at 12-21.

---

[1]The Secretary of Veterans Affairs at the time the Plaintiff commenced this litigation was Anthony J. Principi. The current Secretary of Veterans Affairs, who is automatically substituted as a party defendant in accordance with Federal Rule of Civil Procedure 25(d), is James B. Peake.

Walter seeks compensatory damages, back pay, interest and injunctive relief, as well as attorney fees and costs. Doc. #1 at 10.  The Secretary has moved for summary judgment, claiming that the Plaintiff has not set forth the proof necessary to satisfy all of the elements of his *prima facie* case for each claim. Doc. #16 at 6-11.[2]

I.     FACTS[3]

    A.     Walter's EEO Complaint Filing History

Six months after Walter began working for the Veterans Affairs ("VA") as a police officer, in 1992, he filed an EEO charge of race discrimination,[4] after he was removed from employment. Doc. #35, Attach. #1 (First Walter Dep.) at 30, 35. The parties eventually settled this dispute and Walter was reinstated with back pay and was reimbursed for lost benefits. Id. at 30; Doc. #35, Attach. #2 (Second

---

[2]The Secretary filed for Summary Judgment on September 12, 2005. Doc. #16.  In the meantime, the Court administratively processed the case pending the Plaintiff taking steps to show cause why it should not be dismissed for want of prosecution. Doc. #25 (dtd. Sept. 27, 2006).  The Plaintiff ultimately responded, showing sufficient cause to proceed, yet did not file his Response in Opposition to the Motion for Summary Judgment until January 10, 2008. Doc. #35.  The Secretary did not file a reply to said Response.

[3]Since this case comes before the Court on the Defendant's Motion for Summary Judgment, the Court sets forth the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff, as the party against whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments, 475 F.3d 783, 790 (6th Cir. 2007).

[4]Walter is a Caucasian. Doc. #35, Attach. #1 (First Walter Dep.) at 30.

Walter Dep.) at 31.  Again in 1997, Walter filed an EEO complaint (apparently again alleging discrimination based on race), seemingly as a result of incurring a reassignment of his shift schedule. Doc. #35, Attach. #5 (Walter Aff.) ¶ 4.  Once again, the parties entered into a settlement agreement on this dispute and Walter was ultimately reassigned back to his original shift. Id.  Soon thereafter, however, the VA changed Walter's shift assignment, in contravention of the aforementioned settlement agreement. Doc. #35, Attach. #2 (Second Walter Dep.) at 109.  Upon Walter's reporting of the breach of the agreement, the Office of Resolution Management determined that the VA had indeed breached the agreement and ordered the VA to comply with the terms of the original settlement agreement, which it ultimately did. Id. at 109-10.  In June, 2000, Walter filed a third discrimination complaint, this time against the Chief of Police Parrott. Doc. #35, Attach. #5 (Walter Aff.) ¶ 7.

B.    Allegations of Improper Treatment

Walter asserts that he has been subjected to numerous incidents of improper treatment, on the basis of sex and in retaliation for filing his EEO complaints.  For example, he was removed from bike patrol for failure to report to duty with the required uniform shoes, but he did so only because the VA twice ordered the wrong size shoes for him, so he did not have shoes of the proper size. Doc. #35, Attach. #2 (Second Walter Dep.) at 98-100.  Also, on one occasion, Walter was

disciplined for failing to enter his leave usage into the computer on the day he went on leave. Id. at 147. However, other employees routinely fail to enter their leave usage on a timely basis, yet their supervisors simply remind them to do so a few days later. Doc. #35, Attach. #4 (Ables Aff.) ¶ 8.[5]

Walter was also reprimanded for using hospital computers to conduct police business, a practice that was common among police officers, but for which only Walter was subjected to disciplinary action. Doc. #35, Attach. #2 (Second Walter Dep.) at 128-29. In another incident, occurring four days after Walter filed his EEO Complaint against Chief Parrott, in 2000, the Chief disciplined Walter for several "petty" and unsubstantiated allegations, some of which dated back ten months and others for which he had already been disciplined. Doc. #35, Attach. #3 (Parrott Dep.) at 84-96; Doc. #35, Attach. #5 (Walter Aff.) ¶ 7.

Despite the fact that other officers regularly allowed unauthorized persons into the dispatch office, only Walter was disciplined for allowing such a person to join him there for lunch. Doc. #35, Attach. #2 (Second Walter Dep.) at 214-15; Doc. #35, Attach. #4 (Ables Aff.) ¶ 9. On another occasion, government property in Walter's possession was stolen. Despite VA policy stating that an officer is not personally responsible for such stolen property, Walter was held responsible and his wages garnished. Doc. #35, Attach. #2 (Second Walter Dep.) at 142-45; Doc.

---

[5]The Plaintiff cites the Affidavit of James R. Ables, in support of several of his propositions. Doc. #35, Attach. #4. Officer Ables has been a police officer at the VA since October 2001.

4

#35, Attach. #3 (Parrott Dep.) at 58.  Further, despite the VA's standard practice of accommodating its employees' college schedules when setting work schedules, it did not so accommodate Walter's. Doc. #35, Attach. #2 (Second Walter Dep.) at 208-09; Doc. #35, Attach. #4 (Ables Aff.) ¶ 7.

In another incident, an employee was assigned to conduct an investigation of Walter (for an alleged release of personal information) and, during that investigation, the investigator fabricated evidence and also attempted to induce witnesses to present false testimony against Walter. Doc. #35, Attach. #2 (Second Walter Dep.) at 121-25.  During another investigation into Walter's activities (for an allegation of improper use of the police computer system for personal reasons), Walter alleges that the manner in which the VA conducted the investigation was far more "extravagant" than the way in which it conducted similar investigations into alleged wrongdoing by other officers. Id. at 83-91.  Furthermore, despite the fact that the investigation ultimately concluded that Walter was innocent of any misconduct, the VA still disciplined him. Id. at 91-92; Doc. #35, Attach. #3 (Parrott Dep.) at 68.  The VA also investigated complaints against Walter that were outside that agency's jurisdiction, because the alleged events (which were proven unfounded) occurred off governmental property. Doc. #35, Attach. #2 (Second Walter Dep.) at 137-38.

Walter also points out that the female employee who brought some of the aforementioned unfounded charges against him was never disciplined for bringing

5

false charges, in spite of VA policy that required such charges be filed. Id. at 73. Walter did not initiate any charges against the employee either. Id. Walter also alleges that the VA refused to comply with his Freedom of Information Act request, although it complied with similar requests from other employees. Id. at 157-59.

Although Walter has been employed by the VA since 1992, he remains a police officer and has not been promoted, though less experienced and less competent officers have been promoted to higher ranks. Doc. #35, Attach. #4 (Ables Aff.) ¶ 4. Walter has applied for supervisory positions, during his tenure, but has not been selected; specifically, upon his reinstatement in the mid-1990s, he applied for the position of Supervisory Police Officer, yet the position was given to a less qualified candidate. Doc. #35, Attach. #3 (Parrott Dep.) at 74; Doc. #35, Attach. #5 (Walter Aff.) ¶ 6. Former Chief Parrott states that Walter is "very knowledgeable" and an "outstanding officer" and cannot identify any reason as to why he has been denied promotional opportunities. Doc. #35, Attach. #3 (Parrott Dep.) at 36-37, 77.

Further, according to an officer who began his employment with the VA as a police officer in 1997, and who, at the time of his testimony, was a Captain in the Police and Security Services Department:

> On a number of occasions, I have heard [current Police] Chief McMillian refer to Officer Walter as a "troublemaker" because, according to Chief McMillian, Officer Walter creates problems by filing grievances and addressing matters with the union. Chief McMillian

6

has also said that the police service would be better off without Officer Walter because Officer Walter files too many grievances. Though Chief McMillian sometimes laughs when making these statements, it is clear from his demeanor that he is serious and not joking.

Doc. #35, Attach. #8 (Campbell Aff.) ¶ 3.[6]  The current police chief, Chief McMillian, has also been heard to say, "watch what you say around Walter, he'll file an EEO." Doc. #35, Attach. #4 (Ables Aff.) ¶ 4.[7]  Another supervisor, Captain Minnifield, has also told Walter that he needs to make himself "promotable," which he refuses to clarify when asked and which Walter interprets as implying that he needs to stop filing EEO complaints. Doc. #35, Attach. #2 (Second Walter Dep.) at 131, 133.


II.    SUMMARY JUDGMENT STANDARD

      Summary judgment must be entered "against a party who fails to make a

---

[6]The Defendant points out that Chief McMillian did not assume the position of Chief of Police until after the filing of the Plaintiff's Complaint. Doc. #16 at 11. Deposition testimony supports this statement, yet this same testimony also indicates that prior to becoming chief of police, McMillian was the "acting chief for a period of time and then was the captain or the assistant chief for probably about a year." Doc. #35, Attach. #2 (Second Walter Dep.) at 32.  It is unclear when the statements made by McMillian occurred, in relation to the filing of the Plaintiff's Complaint, and what position McMillian occupied at the time of making such statements.

[7]The Plaintiff also makes an argument about the VA having filed a Notice of Proposed Removal against Walter, in 2007. Doc. #35 at 11-12.  Because the Plaintiff does not explain how this information is relevant to whether he was being discriminated against at the time he filed his Complaint, in June 2002, the Court will not consider the same in ruling herein.

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324.  "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

8

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506

U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift

through the record in search of evidence to support a party's opposition to

summary judgment . . . ."). Thus, a court is entitled to rely, in determining

whether a genuine issue of material fact exists on a particular issue, only upon

those portions of the verified pleadings, depositions, answers to interrogatories and

admissions on file, together with any affidavits submitted, specifically called to its

attention by the parties.


III.    ANALYSIS

Title VII prohibits discrimination in employment on the basis of "race, color,

religion, sex, or national origin," as well as retaliatory discrimination against an

employee "because he has opposed any practice made an unlawful employment

practice by [Title VII]." 42 U.S.C. §§ 2000e-2(a)(1), -3(a), -16(a). The Plaintiff

brings claims alleging both discrimination on the basis of sex and retaliation for

participating in previous protected activity, based on his previously filed EEO

charges. The Court will look at these claims in turn.


    A.    Discrimination on the Basis of Sex (Count I)

In his first claim for relief, Walter alleges that the VA subjected him to a sex-

based hostile work environment. In his Motion for Summary Judgment, the

Secretary argues that, with the exception of proof that as a male he is in a

protected class, Walter has not set forth sufficient evidence to establish any of the elements of his *prima facie* case. Doc. #16 at 6-9.  In response, the Plaintiff points to various parts of the record, which purportedly satisfy the elements of his claim. Doc. #35 at 12-14.  The Court will first determine the proper legal standard to resolve this issue and then determine whether the facts, as alleged, satisfy that standard.

1. <u>Law</u>

"A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile . . . work environment." <u>Meritor Sav. Bank, FSB v. Vinson</u>, 477 U.S. 57, 66, 106 S. Ct. 2399 (1986).  The Supreme Court has determined that a hostile work environment exists when the workplace "is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (internal citation and quotation marks omitted).  In order to bring a successful claim for sexual harassment, based upon a claim of hostile work environment, an employee must establish the following five elements:

(1) the employee is a member of a protected class,

(2) the employee was subject to unwelcomed sexual harassment,

(3) the harassment complained of was based on sex,

(4) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive work environment, and

(5) the existence of respondeat superior liability.

Conley v. City of Findlay, 2008 U.S. App. LEXIS 2382, **21-22 (6th Cir. Jan. 28, 2008) (citing Fleenor v. Hewitt Soap Co., 81 F.3d 48, 49 (6th Cir. 1996)). The Defendant, in this case, challenges the sufficiency of the evidence to support all except the first prong of this test.

As to the third prong (whether the harassment was based on sex), the Sixth Circuit points out that "the law recognizes that non-sexual conduct may be illegally sex-based where it evinces anti-[male] animus, and therefore could be found to have contributed significantly to the hostile environment." Williams v. GMC, 187 F.3d 553, 565 (6th Cir. 1999) (quotation omitted). Further, to establish that an alleged harm was "based on [his] sex," a plaintiff "must show that but for the fact of [his] sex, [he] would not have been the object of harassment." Id. (quotation omitted).

2.     Analysis - Third Prong - Harassment Complained of was "Based on Sex"

As to the third prong of his *prima facie* case, the Plaintiff indicates that the "harassment complained of," in his hostile work environment discrimination claim, is that the VA subjected him to lengthy and unwarranted investigations of alleged

12

instances of misconduct. Doc. #35 at 13-14. In support of the assertion that this harassment was "based on sex," the Plaintiff suggests that while the VA forced him to submit to these investigations, the female employee who brought some of the accusations against him that precipitated some of the investigations was not investigated for bringing unfounded charges, in violation of VA policy. Id. at 13-14. Furthermore, the Plaintiff testifies that a different female employee, at one time, returned a police vehicle without cleaning or refueling it, in violation of VA rules, yet was not disciplined. Id. at 14 (citing Doc. #35, Attach. #2 (Second Walter Dep.) at 218-19).[8]

As legal support for his proposition that these facts satisfy the third prong of his *prima facie* case, the Plaintiff asserts that "[e]vidence that the [VA] treated Officer Walter differently from similarly situated employees is relevant to prove that the hostile work environment was based on sex." Doc. #35 at 13. In support of this contention, he cites Russell v. Ohio, 2007 U.S. Dist. LEXIS 43237, 2007 WL 1731200 (S.D. Ohio June 14, 2007), which, he states, cites Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000), in support of this legal proposition.

The Plaintiff misinterprets the tests applied in these two cases and, thus, has conflated the tests for establishing a  a sex-based employment discrimination claim and a sex-based hostile work environment claim. In Russell v. Ohio, the

---

[8]This fact has nothing to do with the Plaintiff or his case, except to demonstrate that there was another female employee who was not disciplined when she broke VA rules. Doc. #35, Attach. #2 (Second Walter Dep.) at 18-19.

District Court determined that a *prima facie* case of employment discrimination based on race included an element pertaining to the treatment of "similarly situated persons outside the protected class." 2007 U.S. Dist. LEXIS 43237 at *36.[9] Although the Court also conducted an analysis of the plaintiff's hostile work environment claim, it did not consider the treatment of similarly situated employees in so doing. 2007 U.S. Dist. LEXIS 43237 at ** 53-58. Further, although the Russell Court did cite Nguyen, 229 F.3d 559, it cited it in support of a totally unrelated proposition. Id. at *61; see also Nguyen, 229 F.3d at 563 (discussing impact of treatment of similarly situated employees when applying causal connection prong of plaintiff's retaliation claim).

Thus, the case law that the Plaintiff cites for his assertion that evidence that the VA treated him differently from similarly situated employees is relevant to proving his hostile work environment harassment was based on sex is unhelpful.

———————————————

[9]In analyzing whether a plaintiff had satisfied his *prima facie* case of employment discrimination, the Sixth Circuit states that in order to be deemed "similarly-situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). The Plaintiff, in the instant case, has not asserted that he is proceeding on a claim of standard employment discrimination. Nor has he set forth evidence to properly contrast the treatment of such allegedly similarly-situated female employees, such as whether they had the same supervisor and had been subject to the same standards as he. Further, the facts weigh against him in that the multiple allegations of misconduct for which he was investigated are not the same types of misconduct for which the two women were allegedly not investigated.

14

Furthermore, although the Court has found several cases that considered treatment of other non-protected employees as one of several factors in making a "based on sex" hostile work environment determination, the Court has found no case law that looks solely at the treatment of "similarly situated" employees, in this context.

The Sixth Circuit has considered two cases that involved allegations pertaining to differing treatments of male and female employees, along with other instances of sexual harassment.  In <u>Williams v. GMC</u>, 187 F.3d 553 (6th Cir. 1999), the Court determined that the plaintiff had set forth enough evidence to survive summary judgment on the "based on sex" prong, but in <u>Bowman v. Shawnee State Univ.</u>, 220 F.3d 456, 464 (6th Cir. 2000), the Appellate Court came to the opposite conclusion.  In comparing the factual situations in those two cases, the <u>Bowman</u> Court stated:

> In Title VII actions, however, it is important to distinguish between harassment and discriminatory harassment in order to "ensure that Title VII does not become a general civility code." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 788, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998) (citation omitted).  In <u>Williams</u>, evidence that the plaintiff was ostracized on myriad instances when others were not, combined with gender-specific epithets used, such as "slut" and "fucking women," was sufficient to create an inference that her gender was the motivating impulse for her co-workers' behavior and allowed the non-sexual harassment to be considered in the hostile environment analysis. <u>See</u> <u>Williams</u>, 187 F.3d at 565-66.  Unlike the plaintiff in <u>Williams</u>, Bowman has not alleged that [the defendant] made a single comment evincing an anti-male bias.  Besides a bare and unsupported assertion that some women employees were allowed to engage in work outside the University while he was not, Bowman has not shown that the non-sexual conduct he complains of had anything to do with his gender.  While he may have been subject to intimidation, ridicule, and mistreatment, he has not shown that he was treated in a

15

discriminatory manner because of his gender.

Bowman, 220 F.3d at 464. In sum, the Williams plaintiff survived summary

judgment, by showing that she was ostracized on myriad occasions when others

were not and that she was the target of various gender-specific epithets. In

Bowman, however, the fact that the male plaintiff had been subject to intimidation,

ridicule, and mistreatment, as well as that women employees were allowed to

engage in work outside the University while he was not, was insufficient evidence

to enable the Plaintiff to survive summary judgment.[10]

_____

[10]Bowman, the male plaintiff (college instructor) alleged the following inappropriate conduct on the part of Jahnke, the female defendant employer (the dean of education):

1) Jahnke placed her hand on Bowman's shoulder and rubbed it for approximately one to two seconds.

2) Jahnke chastised Bowman for missing classes that he did not miss.

3) After emphasizing the importance of teaching every class, Jahnke reprimanded Bowman for not attending an optional meeting scheduled at a time when he had to teach a class.

4) Jahnke forced Bowman to apologize for failing to attend a party hosted by one of Jahnke's friends.

5) At a party at Jahnke's house, Bowman was leaning against the stove when Jahnke grabbed his buttocks. Bowman turned around and told Jahnke that if someone were to do that to her she would fire him or her. Jahnke replied that "she controlled [Bowman's] ass and she would do whatever she wanted with it."

6) Bowman went to Jahnke's house to repair her deck. While there, Jahnke told Bowman "let's get it finished, [and then] you and I can try [the whirlpool] out together."

Like the plaintiff in <u>Bowman</u>, the Plaintiff here has not created a genuine issue of material fact as to whether the harassment he complains of was "based on his sex." The only facts he points to are that the two female employees did not receive punishment for violating VA rules, while he did. The Plaintiff has pointed to nothing to indicate that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" - the threshold requirements for hostile work environment claims or, as stated by the <u>Bowman</u> Court, Plaintiff has not shown

---

7) Jahnke invited Bowman and his girlfriend to her house to go swimming in her pool. After a short period of time, Bowman decided to leave, at which point Jahnke commented to him that "next time, you know, you ought to come by yourself and enjoy yourself."

8) Bowman met with Jahnke in her office. Jahnke placed her hands upon Bowman and pushed him towards the door.

9) Jahnke called Bowman at home on various occasions.

10) Jahnke demanded that Bowman leave a phone number with her when he was on vacation; Jahnke required Bowman to take additional athletic training in order for him to remain in his position; Jahnke required Bowman to investigate fellow employees and students; Jahnke demanded that Bowman take his name off his office door when she removed him from his position; Jahnke required Bowman to work in the summer without pay; Jahnke allowed females to work outside the University, but prohibited Bowman from doing so; Jahnke threatened that she would "pull the plug" on Bowman if he did not submit to her wishes and; Jahnke reprimanded Bowman for working extra jobs on his own free time, but demanded that Bowman come to her home during working hours to perform extra duties.

<u>Bowman</u>, 220 F.3d at 459.

that the non-sexual conduct he complains of had anything to do with his gender.[11]

See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367 (1993).

Because the Plaintiff has not presented evidence to establish the third element of his *prima facie* case of sex discrimination, the Court finds it unnecessary to determine if he satisfies the other challenged elements.[12]  Having found that there is no genuine issue of material fact, as to whether the Plaintiff has satisfied each element of his claim, the Defendant's Motion for Summary Judgment, as to the Plaintiff's sex-based hostile work environment claim, is SUSTAINED.

B.    Retaliation (Count II)

_____

[11]The Plaintiff's argument here, as well as the facts of his case, sound more of either a standard employment discrimination claim or a retaliation claim.  The Plaintiff has alleged the same wrongful conduct, pertaining to the numerous investigations of his alleged misconduct, in his retaliation argument *infra*.  The Sixth Circuit has held that "conduct alleged to have occurred in retaliation for complaints made about a hostile work environment can not be figured 'into the hostile working environment equation,' because such incidents are not alleged to have occurred 'because of sex.'" Nievaard v. City of Ann Arbor, 2005 U.S. App. LEXIS 3690, *16 (6th Cir. Mar. 7, 2005) (quoting Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790-91 (6th Cir. 2000)).  The Appellate Court has, thus, refused to consider such conduct twice - - - in the analysis of both the retaliation and the hostile work environment claim. Id.; Morris, 201 F.3d at 790-91.

[12]Although it is unnecessary for the Court to decide this issue, there, likewise, does not appear to be a genuine issue of material of fact on the second prong of the Plaintiff's *prima facie* case, due to a lack of evidence demonstrating that the harassment complained of (the myriad investigations of his alleged misconduct, while two female employees were not investigated for their alleged misconduct) was unwelcomed "sexual" harassment.

In his second claim for relief, Walter alleges that the VA retaliated against him for his participation in prior, protected activity.  In his Motion for Summary Judgment, the Defendant argues that the Plaintiff cannot satisfy his *prima facie* case, because he has not demonstrated either an adverse employment action, severe or pervasive harassment, or a causal connection between his prior protected activity and the alleged retaliatory treatment. Doc. #16 at 9-11.  In response, the Plaintiff points to various parts of the record, which purportedly satisfy these elements of his claim. Doc. #35 at 14-21.  The Court will first determine the proper legal standard to resolve this issue and then determine whether the facts, as alleged, satisfy that standard.

In order to establish the *prima facie* elements of a retaliation claim, a plaintiff must show that:

(1) [he] engaged in activity protected by Title VII;

(2) this exercise of protected rights was known to defendant;

(3) defendant thereafter took adverse employment action against the plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and

(4) there was a causal connection between the protected activity and the adverse employment action or harassment.

Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 595 (6th Cir. 2007) (citing Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)).  It is the third and fourth element of this claim about which the parties to the present action dispute.

    1. <u>Third Prong - Adverse Employment Action or Severe or Pervasive Retaliatory Harassment</u>

  In order to satisfy the third prong of his *prima facie* case of retaliation, the Plaintiff must demonstrate either that the VA took an adverse employment against him or that a supervisor subjected him to severe or pervasive retaliatory harassment. The Court will analyze these two means of proof, in turn.

    a. <u>Adverse Employment Action</u>

  The Sixth Circuit has defined an adverse employment action as a "materially adverse change in the terms and conditions of [plaintiff's] employment." <u>Smith v. City of Salem</u>, 378 F.3d 566, 575-576 (6th Cir. 2004) (citing <u>Hollins v. Atlantic Co.</u>, 188 F.3d 652, 662 (6th Cir. 1999)). The Supreme Court recently determined that, in order to demonstrate an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." <u>Burlington Northern & Santa Fe Ry. v. White</u>, 126 S. Ct. 2405, 2415 (2006). The Supreme Court clarifies that when determining whether an action is materially adverse, "it is important to separate significant from trivial harms." <u>Id.</u> "Title VII . . . does not set forth 'a general civility code for the American workplace' [and thus, does not] immunize [an] employee from those petty slights or minor annoyances that often take place at work and that all employees experience." <u>Id.</u> (quoting <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 80, 118 S. Ct. 998 (1998)). With a focus on both the materiality of

20

the challenged action and the perspective of a reasonable person in the plaintiff's position, "this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." Id. at 2416. Examples of adverse employment actions include "firing, failure to promote, reassignment with significantly lower responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." EEOC v. Sundance Rehab. Corp., 466 F.3d 490, 501-502 (6th Cir. 2006) (quoting Smith, 378 F.3d at 575-76).

The Plaintiff points to evidence indicating that, although he has applied for supervisory positions since he began his employment in 1992, he remains a police officer and has not been promoted, though less experienced and less competent officers have been promoted to higher ranks. The Defendant does not provide anything, in response.

The Court finds that the Plaintiff has set forth evidence that indicates that a reasonable employee would have found that the Defendant's failure to promote the Plaintiff was a materially adverse action. There is, therefore, a genuine issue of material fact as to whether the VA has taken an adverse employment against Walter.


        b.    <u>Severe or Pervasive Retaliatory Harassment</u>

The prohibition of harassment forbids "behavior so objectively offensive as

21

to alter the 'conditions' of the victim's employment. 'Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive -- is beyond Title VII's purview.'" Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S. Ct. 998 (1998)). Further,

> "Simple teasing," offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." Whether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 2283 (1998) and Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 114 S. Ct. 367 (1993)).

In support of his contention that he suffered severe or pervasive retaliatory harassment, the Plaintiff points to the inordinate number of times he has been subjected to investigation, with the allegations that prompted such investigations oftentimes turning out to be unfounded. He also asserts that he was, at times, disciplined for charges after the findings exonerated him from wrongdoing. Also, he complains that the manner in which he was investigated for some allegations was out of the ordinary compared to how other claims were pursued against other officers. Further, he was removed from bike patrol under the pretext that he

22

reported to duty in an improper uniform when the VA was at fault for not providing him such.  The Plaintiff also highlights the comments made by Chief McMillian, wherein the Chief indicated that Walter was a troublemaker, because he filed grievances and that the police service would be better off without him on the force, because of it.[13]

The Defendant contends that the Plaintiff has not offered "one scintilla of evidence of 'severe or pervasive' harassing conduct by the Defendant." Doc. #16 at 8, 11 (emphasis in original).  The Court disagrees.  Looking at the totality of the circumstances, as the Court must do, see Jordan v. City of Cleveland, 464 F.3d 584, 598-99 (6th Cir. 2006), there is quite clearly a genuine issue of material fact as to whether the VA subjected the Plaintiff to an environment that a reasonable person would find hostile or abusive.  The alleged conduct amounts to far more than simple teasing, offhand comments or isolated incidents, but is sufficiently severe and pervasive to indicate discriminatory changes in the "terms and conditions" of the Plaintiff's employment.

There being a genuine issue of material fact as to whether the VA has taken an adverse employment against Walter and also as to whether Walter suffered severe and pervasive retaliatory harassment, the Court will now turn to an analysis

---

[13]As noted in *supra* note 5, the Secretary offers evidence indicating that McMillian did not assume the position of Chief of Police until after the filing of the Plaintiff's Complaint. Doc. #16 at 11.  However, the Court finds that there is a genuine issue of material fact as to when McMillian made the statements at issue and what position he held at that time.

23

of the fourth prong of the Plaintiff's *prima facie* case.

   2. <u>Fourth Prong - Causal Connection between Protected Activity</u>
<u>and Adverse Employment Action or Harassment</u>

  In order to satisfy the fourth prong of his *prima facie* case of retaliation, the

Plaintiff must demonstrate that there was a causal connection between his

protected activity (his filing of EEO charges) and the adverse employment action or

harassment to which he was subjected.

> In order to show a causal connection, a plaintiff must produce
> sufficient evidence from which an inference can be drawn that the
> adverse action would not have been taken had the plaintiff not filed a
> discrimination action. Although no one factor is dispositive in
> establishing a causal connection, evidence that the defendant treated
> the plaintiff differently from identically situated employees or that the
> adverse action was taken shortly after the plaintiff's exercise of
> protected rights is relevant to causation.

<u>Allen v. Michigan Dep't of Corrections</u>, 165 F.3d 405, 413 (6th Cir. 1999). In

addition, "the burden of establishing a *prima facie* case in a retaliation action is not

onerous, but one easily met." <u>Id.</u>

  In support of his assertion that there is a causal connection, in this case, the

Plaintiff states that the causation may be inferred from the proximity in time (four

days) between the time he filed a discrimination complaint against Chief Parrott, in

2000, and the discipline he received (for several "petty" and unfounded

allegations, some of which dated back ten months and others for which he had

already received discipline). Doc. #35 at 18-19. He also asserts that upon his

reinstatement after filing an EEO complaint, in the mid-1990s, he was denied a

promotion to the position of Supervisory Police Officer and the position was given

25

to a less qualified candidate. Id. at 19.  The Plaintiff also points to the negative comments made by his supervisor, as they specifically related to his previous participation in protected activities, as support for a causal connection between his alleged harassment and said protected activities. Id. at 20.

When viewing the totality of the evidence, in the light most favorable to the Plaintiff, Imwalle v. Reliance Med. Prods., 515 F.3d 531, 551 (6th Cir. 2008), the Court finds that the following support an inference of retaliatory conduct: Plaintiff's deposition and affidavit testimony about the retaliatory harassment he experienced after filing his complaints; other affiants' statements about the supervisor's comments; the relatively short time between the Walter's protected activity in the mid-1990s, and his failure to be selected for promotion; and the similar relatively short time period between his protected activity in 2000, and the seemingly unwarranted discipline he received thereafter.  Given that "the burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met," Allen, 165 F.3d at 413, the Court finds that there is a genuine issue of material fact, on the issue of whether there is a causal connection between Walter's prior protected activities and the adverse employment action and harassment to which he was subjected.

Because the Plaintiff has presented evidence sufficient to establish that there is a genuine issue of material fact as to the third and fourth prongs of his *prima facie* case of retaliatory discrimination, the Defendant's Motion for Summary

Judgment, as to the Plaintiff's retaliation claim, is OVERRULED.[14]


IV.    CONCLUSION

The Defendant's Motion for Summary Judgment (Doc. #16) is SUSTAINED,

as to Count I, which alleges discrimination on the basis of sex, and is OVERRULED,

as to Count II, which alleges retaliation for participating in previous protected

activity.


April 9, 2008


                              /s/ Walter Herbert Rice
                         WALTER HERBERT RICE, JUDGE
                         UNITED STATES DISTRICT COURT


Copies to:
Counsel of record

---

[14]The Defendant moves for summary judgment only on the issue of the
Plaintiff's lack of proof of his *prima facie* case of retaliation. Doc. #16 at 9-11.
Thus, the Court need not address whether the Defendant has articulated a
legitimate, nondiscriminatory reason for its actions or whether the Plaintiff has
shown that said reason is a pretext for retaliation.